Anthony HUNTER and Elaine Hunter  *v.*
Timothy M. HAUNERT

CA 07-439                                         270 S.W.3d 339

Court of Appeals of Arkansas
Opinion delivered December 19, 2007

*Blair & Stroud*, by: *H. David Blair* and *Michelle C. Huff*, for appellants.

*Murphy, Thompson, Arnold, Skinner & Castleberry*, by: *Tom Thompson* and *Casey Castleberry*, for appellee.

BRIAN S. MILLER, Judge. This case involves the right of appellants, Anthony and Elaine Hunter, to change the surname of their minor son, J.H., from Haunert to Hunter, and to terminate appellee Timothy M. Haunert's visitation rights with J.H. While seemingly simple, this case is complicated by several facts. First,

Anthony impregnated Elaine while she was married to Haunert. Second, J.H. was born while Elaine and Haunert were married and Haunert, for all intents and purposes, was the only father J.H. had for the first two years of his life, until Elaine divorced Haunert and married Anthony. Third, the divorce decree entered by Elaine and Haunert found that Haunert stood *in loco parentis* to J.H.; ordered that Haunert have visitation with J.H.; and required Haunert to pay child support and provide medical insurance for J.H.

The Hunters petitioned the Independence County Circuit Court to change J.H.'s surname to Hunter and to terminate Haunert's visitation rights. The trial court denied the Hunters' petition and found that the marriage of Anthony and Elaine was not a material change of circumstances warranting the termination of Haunert's visitation rights. The court also denied the Hunters' petition to change J.H.'s surname.

On appeal, the Hunters argue that: (1) the court erred by denying their petition to change J.H.'s surname; (2) the court infringed upon their Fourteenth Amendment Due Process rights by permitting Haunert to have visitation with J.H., against their wishes; (3) the court erred in finding that their marriage was not a material change of circumstances warranting the termination of Haunert's visitation rights.

We agree that the Hunters' marriage was not a material change in circumstances warranting the termination of Haunert's visitation rights. We also hold that the Hunters' rights to due process are not violated by the order of the trial court. Therefore, we affirm the trial court's ruling that Haunert is permitted to continue his visitation with J.H. The trial court, however, erred in denying the Hunters' petition to change J.H.'s surname to reflect the name of his parents, by whom he is being raised. Therefore, we reverse on that point.

## I. Background

Elaine and Haunert were married in 1988 and lived together until their separation in August 2002. Their divorce decree (DR-02-384-4) was entered on March 4, 2003. During their marriage, two children were born: T.H. (d.o.b. 8-18-91) and J.H. (d.o.b. 5-1-00). Although Haunert was not the biological father of either child, the divorce decree specifically found that Haunert had stood *in loco parentis* to the children and the decree ordered Haunert to pay child support and to maintain health insurance for the chil-

dren. Elaine married Anthony on April 29, 2004, and a paternity test established Anthony as the father of J.H.

Haunert filed a petition for contempt on July 21, 2005, alleging that Elaine was refusing him visitation with the minor children. The parties conferred and resolved their conflict by consent order on September 1, 2005. That order reaffirmed the parties' original agreement permitting Haunert to have visitation with J.H. and T.H. It also allowed Haunert to make up the visitation that he had missed.

Elaine and Haunert then petitioned and counter-petitioned the court concerning various issues from visitation to custody, culminating in Elaine's June 14, 2006, petition to terminate Haunert's visitation rights with J.H. Approximately one week later, the Hunters petitioned to have Anthony adjudicated the biological father of J.H., to have J.H.'s surname changed to Hunter, and to amend J.H.'s birth certificate to reflect that Anthony was his father.

## II. The Hearing

A hearing on the petitions was held on August 28, 2006. Prior to this hearing, the parties agreed that Haunert would have custody of T.H., who was neither Anthony's nor Haunert's biological son. At the hearing, Haunert testified that although he was not the biological father of the children, he had paid child support and had maintained health insurance on the children. He also stated that the Hunters had denied him visitation on at least four occasions. He further stated that he has a father-son relationship with J.H.; that he has been J.H.'s father since he was born; that J.H. calls him "dad"; that he buys J.H. clothes and attends his baseball games; that his family considers J.H. his child and treats him as such; that he purchased a dirt bike for J.H.; and that it was not in J.H.'s best interest to have his last name changed.

T.H. testified that he and J.H. have a good relationship. He said that J.H. refers to Haunert as "dad" and to Anthony as "step-dad." He said that he and Anthony have a bad relationship and that he has not been in the Hunters' house in months.

Haunert's neighbor, Linda Dickerson, testified that J.H. was "crazy about" Haunert. She said that Haunert and J.H. have a wonderful relationship and that she had not seen anything that would suggest that Haunert was not capable of raising his children.

Anthony testified that J.H.'s surname should be changed to Hunter because J.H. is confused as to why his surname is Haunert.

Anthony said that he, Elaine, and all of his seven children, except J.H., carry the Hunter surname. Anthony stated that J.H. is very close to his siblings and that he knew he was J.H.'s father from the time he was born. Moreover, J.H. has lived with Anthony and Elaine since their marriage in 2004. Anthony also testified that he supports Elaine in whatever decisions she makes regarding whether Haunert should continue to have visitation with J.H.

Elaine testified that J.H. has always known Anthony as his father as proven by the fact that J.H. did not visit Haunert on Father's Day in 2005. She said that J.H. is confused by having to call two men "dad" and that Haunert undermines the Hunters' parenting decisions. She stated that she wants a "normal life" and that having to send J.H. to Haunert's house, which she believes is somewhat unsafe, infringes on her and Anthony's parental rights. She stated, however, that Haunert pays child support and that she has never given him any of the money back.

The trial court found that there was insufficient proof to support the Hunters' petition to change J.H.'s surname. The court entered an order (1) denying the Hunters' request to terminate Haunert's visitation with J.H.; (2) terminating child support; (3) granting full custody of T.H. to Haunert; (4) holding Elaine in contempt and ordering her to pay $500 attorney's fee to Haunert; (5) denying the petition to change J.H.'s surname; (6) ordering Haunert to get rid of J.H.'s dirt bike; and (7) granting Haunert the right to attend J.H.'s parent-teacher conferences and school functions. This appeal followed.

### III. Standard of Review

We review domestic-relations cases de novo on the record, and we will not reverse the trial court's findings unless they are clearly erroneous. *Robinson v. Ford-Robinson*, 362 Ark. 232, 208 S.W.3d 140 (2005). A trial court's finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire record is left with a definite and firm conviction that a mistake has been committed. *Id.* We give due deference to the superior position of the trial court to view and judge the credibility of the witnesses. *Id.* This deference is even greater in cases involving children, as a heavier burden is placed on the judge to utilize to the fullest extent his or her powers of perception in evaluating the witnesses, their testimony, and the best interest of the children. *Id.*

## IV. Change of Surname

The Hunters first argue that the trial court erred when it refused to change J.H.'s surname to Hunter. When a party seeks to have a child's surname changed, the following factors should be considered:

> (1) the child's preference; (2) the effect of the change of the child's surname on the preservation and development of the child's relationship with each parent; (3) the length of time the child has borne a given name; (4) the degree of community respect associated with the present and proposed surnames; (5) the difficulties, harassment, or embarrassment that the child may experience from bearing the present or proposed surname; and (6) the existence of any parental misconduct or neglect.

*Huffman v. Fisher (Huffman I)*, 337 Ark. 58, 987 S.W.2d 269 (1999). Where a full inquiry is made by the trial court regarding the implication of these factors and a determination is made with due regard to the best interest of the child, the trial court's decision will be upheld where it is not clearly erroneous. *Gangi v. Edwards*, 93 Ark. App. 217, 218 S.W.3d 339 (2005). The burden of proof is on the moving party to demonstrate that the name change is in the best interest of the child. *Id.* The court also has the discretion to consider other factors when determining what surname would be in the best interest of the child. *See Bell v. Wardell*, 72 Ark. App. 94, 34 S.W.3d 745 (2000). In its letter opinion, the trial court determined that insufficient evidence was presented to support the name change. We disagree.

The trial court erred by denying the Hunters' petition to change J.H.'s surname to Hunter. Three of the *Huffman* factors are relevant to this case. Factor three, which focuses on the length of time the child has borne a given name, weighs in favor of keeping J.H.'s surname the same. This is true because J.H. has borne the name Haunert all of his life. Factors two and five, however, clearly weigh in favor of the proposed name change. Changing J.H.'s surname will help preserve and develop his relationship with his biological parents, Anthony and Elaine, both of whom carry the Hunter name. J.H. may also be subjected to difficulties, harassment, or embarrassment simply because he bears a name different from that of his parents and siblings. Indeed, J.H. is being raised in the home with his biological parents and a younger sibling, all of whom carry the name Hunter. He should be

allowed to bear their name. For these reasons, we reverse and remand with instructions to enter an order granting the name change.

## V. Due Process

The Hunters next argue that, as J.H.'s parents, they have a fundamental liberty interest in deciding who has visitation with J.H. *See Troxel v. Granville*, 530 U.S. 57 (2000). They argue that the trial court's refusal to terminate Haunert's court ordered visitation with J.H. infringes upon their Fourteenth Amendment right to due process. The Fourteenth Amendment provides that no State shall deprive any person of life, liberty, or property, without due process of law. *Id.* The Supreme Court of the United States has held that parents have a fundamental right to make decisions concerning the care, custody, and control of their children. *Id.*

█ The Hunters have waived their due process argument. Elaine and Haunert entered their divorce decree on March 4, 2003. The decree was entered by consent and provides that Haunert stood *in loco parentis* to J.H. It ordered visitation between Haunert and J.H. and Elaine never asserted that the decree violated her due process rights. Although visitation between Haunert and J.H. continued after Anthony and Elaine were married, Anthony never objected to it, although he knew that J.H. was his biological son. Indeed, less than one month before filing the petition to terminate Haunert's visitation rights, Elaine entered a consent order reaffirming Haunert's visitation rights. Anthony and Elaine also continued to accept child support checks for J.H. and allowed Haunert to pay for J.H.'s medical insurance well after their marriage.

We would affirm even if the Hunters had not waived their due process argument because *Troxel* is distinguishable from the present case. In *Troxel*, the Supreme Court held that the State of Washington's grandparent-visitation statue was unconstitutional. 530 U.S. at 67. Consequently, the trial court's order granting visitation to grandparents, over the objection of the child's mother, was reversed. The grandparents in *Troxel* never stood *in loco parentis* to the grandchild, and the award of visitation was based on a statute and not a divorce decree.

█ In *Robinson*, 362 Ark. at 239, 208 S.W.3d at 143, the Arkansas Supreme Court distinguished *Troxel*. Unlike *Troxel*, in which grandparents sought visitation, "the visitation in [*Robinson*]

arose out of a custody determination in a divorce proceeding rather than from a lawsuit brought by nonparents pursuant to a statute." *Id.* at 234, 208 S.W.3d at 143. The court further held that:

> Moreover, and critical to our review in this case, the party awarded visitation in this case was found by the circuit court to stand *in loco parentis* to the child. In other words, the court granted visitation to a person considered to be, in all practical respects, a non-custodial parent.

*Id.* at 239, 208 S.W.3d at 143, 144. It is undisputed that Haunert's visitation arose out of a divorce proceeding and was not brought pursuant to a statute. It is also undisputed that Haunert stood *in loco parentis* to J.H. Therefore, the precedent established in *Robinson* applies and the trial court did not err in denying the Hunters' petition to terminate Haunert's visitation with J.H.

## VI. *Material Change of Circumstances*

Finally, the Hunters argue that the trial court erred in concluding that their marriage was not a material change of circumstances warranting the termination of Haunert's visitation rights with J.H. The trial court maintains continuing jurisdiction over visitation and may modify or vacate those orders at any time when it becomes aware of a change in circumstances or of facts not known to it at the time of the initial order. While visitation is always modifiable, courts require more rigid standards for modification than for initial determinations in order to promote stability and continuity for the children and in order to discourage repeated litigation of the same issues. *Id.* The party seeking a change in the visitation schedule has the burden to demonstrate a material change in circumstances that warrants a change in visitation. *Id.* The best interest of the children is the main consideration. *Id.* The trial court found that no material change in circumstances existed to warrant a modification of the visitation schedule.

█ The trial court did not err in denying the Hunters' petition to terminate Haunert's visitation with J.H. The Hunters' marriage was not a material change in circumstances sufficient to modify Haunert's visitation rights. *See Middleton v. Middleton*, 83 Ark. App. 7, 113 S.W.3d 625 (2003). Further, terminating Haunert's visitation rights would not be in J.H's best interest. This is true because J.H. has known Haunert as his father his entire life and has enjoyed visitation with Haunert since his mother and

Haunert divorced. His older brother, T.H., whom he has known since birth and with whom he has a good relationship, lives with Haunert. The record indicates that T.H. is not welcome in the Hunters' home and, therefore, terminating Haunert's visitation would also disallow J.H. the opportunity to maintain his relationship with T.H. For these reasons, we affirm on this point.

Affirmed in part; reversed and remanded in part, with instructions.

MARSHALL and VAUGHT, JJ., agree.