2009 Ark. App. 580

**Gary PAINTER and Norma Painter, Appellants,**

v.

**Bethany KERR, Appellee.**

**No. CA 08–656.**

Court of Appeals of Arkansas.

Sept. 9, 2009.

J. Carl Bush, Fort Smith, for appellants.

Dossey & Burke, PLC, by: Brian T. Burke, Bentonville, for appellee.

KAREN R. BAKER, Judge.

This appeal arises from an order issued by the Benton County Circuit Court denying appellants' petition for grandparent visitation pursuant to Ark.Code Ann. § 9–13–103 (Repl.2008). Appellants raise the following four arguments on appeal: (1) that the trial court erred in finding that Anthony Painter was charged with and pled guilty to sexually based offenses involving I.P.; (2) that the trial court erred in concluding that appellants lack the capacity to provide guidance to I.P. because of their willingness, absent a court order to the contrary, to allow her to visit her biological father in prison; (3) that the trial court erred in concluding that appellants failed to prove by a preponderance of the evidence that loss of their relationship with I.P. was likely to harm her; and (4) that because of its incorrect holdings described in points two and three, the trial court erred in concluding that appellants failed to prove that their visitation with I.P. was in her best interest within the meaning of Ark.Code Ann. § 9–13–103(c)(2)(B) and (e). Finding no error, we affirm on all points.

Bethany Kerr and Anthony Painter were married on April 29, 2000. They had one biological child, I.P. Bethany also had an older daughter from a previous marriage, K.A. Appellants Gary and Norma Painter are I.P.'s paternal grandparents, who sought grandparent visitation after Bethany and Anthony's divorce and Anthony's incarceration.

In March 2007, Bethany and Anthony were divorced. In April 2007, appellants filed a petition for grandparent visitation pursuant to Ark.Code Ann. § 9–13–103. At a hearing on the matter, Bethany testified that from the time of I.P.'s birth (on July 31, 2003) until December 2005, appellants saw I.P. approximately every two months during the winter and more often during the summer. She stated that "there was never a time in [I.P.'s] life where Gary and Norma Painter were her regular caregivers" and that between January 2006 and May 2006, Norma and Gary saw I.P. only during Anthony's supervised visitation. She further testified that after May 2006, Norma and Gary made no attempt to contact I.P. and had no relationship with her. Bethany testified that it was not in I.P.'s best interest to have a relationship with Gary and Norma and that she did not agree with the relationship Gary and Norma wanted I.P. to have with Anthony. Bethany testified that I.P. was "a very healthy child" and "a very happy child."

Norma and Gary Painter testified that they saw I.P. "face-to-face once a month" from the time she was born until December 2005. They made a trip to Bethany and Anthony's home "at least once a month during the first year of [I.P.'s] life." She stated that there were occasions when Bethany and Anthony also visited her at her home in Missouri. She stated that from 2003 to 2005 she spoke to I.P. on the phone once or twice a week. Each year, Gary and Norma Painter had an anniversary celebration, which I.P. attended. When I.P. spent time with Norma, they did such things as play with Norma's makeup, jump on the trampoline, or dance to music. Gary and Norma also took I.P. to places such as Worlds of Fun and Oceans of Fun when she visited. Norma and Gary testified that their relationship with Bethany changed in January 2006, when Anthony was charged with possession of child pornography and sexual assault of K.A.

Between January 2006 and May 2006, Norma traveled with Anthony to his two-

hour supervised visitation sessions with I.P. Gary only traveled with her to the visitations "about forty percent of the time" because of his work schedule. During the visitations, Norma and Gary were able to play with I.P. Norma testified that I.P. did not want to leave when the visitations were over. Norma testified that she did not see I.P. again after a May 2006 visitation. Anthony was incarcerated soon thereafter for possession of child pornography and sexual assault on K.A. After Anthony's incarceration, Norma and Gary attempted to call Bethany to speak with I.P., but Norma testified that after a while, the calls were not. returned. Norma explained that the most important thing for her and Gary was to see their granddaughter. She stated, "I am willing to do whatever it takes to have that opportunity," and "I will also honor any conditions this Court might impose on any such visitation."

Norma acknowledged during her testimony that Anthony was guilty of possession of child pornography on his computer, but stated that he denied sexually assaulting K.A. Gary testified that Anthony "swore up and down to [him] that he had not committed that offense [of sexual assault]." Gary stated that "[Anthony] denied that he was guilty of second degree sexual assault ... He did admit to the Judge that he was guilty of the same conduct he had denied having committed to me. I believe I raised my son to the best of my ability, and I know my son. I know my son, and he says 'No,' I am going to take it as a 'No.' There are other circumstances why he told the Judge that he did this." On cross-examination, Norma testified, "I am not in my son's mind. I agree that he told me he did not commit the sexual assault, but he told the Judge he did. I do not know whether he was lying when he admitted to the Judge that he was guilty of that charge. I would hope

not." Norma and Gary visited Anthony in prison once every other month. Norma testified that she believed that Anthony "should presently have a relationship with [I.P.]." When asked if prison was an appropriate place for a four-year-old child, she responded "I feel as though a child should have the love of both parents and be able to see them regardless of where they are located." She further stated, "I personally feel as though it is fine because it is just a great big room with guards. There are all kinds of children there." Gary testified that he believed that it was "important to facilitate a relationship between" Anthony and I.P. and he did think "that a prison [was] an appropriate place to take a four-year-old little girl." However, he stated that he would honor a court order instructing him to not take I.P. to the prison.

After the hearing, the trial court issued an order denying appellants' request for grandparent visitation. Appellants then filed a motion to amend the findings of fact and to vacate and modify the judgment pursuant to Ark. R. Civ. P. 52(b) and Ark. R. Civ. P. 60(a). The trial court denied the motion.

■ A grandparent's right to visit a grandchild is a right created by statute. *Boothe v. Boothe*, 341 Ark. 381, 17 S.W.3d 464 (2000). Arkansas Code Annotated section 9–13–103 (Repl.2008) provides that a grandparent may petition for reasonable visitation rights with a grandchild if the marital relationship between the parents and the child has been severed by divorce.

However, Arkansas Code Annotated section 9–13–103(c)(1) states that there is a rebuttable presumption that a custodian's decision denying or limiting visitation to the petitioner is in the best interest of the child. To rebut the presumption, the petitioner must prove by a preponderance of the evidence that (a) the petitioner has established a significant and viable rela-

tionship with the child and (b) that visitation is in the best interest of the child. Ark.Code Ann. § 9–13–103(c)(2). Subsection (d) states that to establish a significant and viable relationship with the child, the petitioner must prove by a preponderance that the child resided with the petitioner for at least six consecutive months with or without the current custodian present; that the petitioner was the caregiver to the child on a regular basis for at least six consecutive months or the petitioner had frequent or regular contact with the child for at least twelve consecutive months; or any other facts that establish that the loss of the relationship between the petitioner and the child is likely to harm the child. Ark.Code Ann. § 9–13–103(d)(1) and (2). Further, to establish that visitation with the petitioner is in the best interest of the child, the petitioner must prove the following: the petitioner has the capacity to give the child love, affection, and guidance; the loss of the relationship between the petitioner and the child is likely to harm the child; and the petitioner is willing to cooperate with the custodian if visitation with the child is allowed. Ark.Code Ann. § 9–13–103(e).

■ We review domestic-relations cases de novo on the record, and we will not reverse the trial court's findings unless they are clearly erroneous. *Grant v. Richardson*, 2009 Ark. App. 187, 300 S.W.3d 499 (citing *Hunter v. Haunert*, 101 Ark. App. 93, 270 S.W.3d 339 (2007)). A trial court's finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire record is left with a definite and firm conviction that a mistake has been committed. *Id.* We give due deference to the superior position of the trial court to view and judge the credibility of the witnesses. *Id.* This deference is even greater in cases involving children, as a heavier burden is placed on the judge to utilize to the fullest extent his or her powers of perception in evaluating the witnesses, their testimony, and the best interest of the children. *Id.*

■ For their first point on appeal, appellants assert that the trial court erred in finding that Anthony was charged with and pled guilty to sexually based offenses involving I.P. They characterize this finding as an error of fact that would require reversal even under a "plain error" standard of review. The trial court's order stated appellants' son "was charged with two sexually based offenses, involving the granddaughter,[I.P.], and the [appellee]'s then 14 year old daughter by a prior marriage," to which their son pled guilty. The trial court did not specifically find that I.P. was the victim of either of the charges. Instead, the trial judge made the broader statement that there were two offenses "involving" the children. Nothing in the record indicates whether either child was depicted in the child pornography on Anthony's computer. There is little evidence in the record concerning the sexually based offenses to which Anthony pled guilty. The parties agreed that the trial court could take judicial notice of Anthony's guilty plea to the offenses and no evidence on the specific facts that led to the charges was introduced. Although the testimony indicates that K.A. was the victim of the sexual assault charge, there is nothing in the record that refutes the trial court's finding that I.P. was *involved*. In fact, it is difficult to envision a situation where a child is sexually assaulted in her own home by a family member where a sibling living in that same home is not involved in some manner. Similarly, we cannot say on this record that I.P. was not involved in the child-pornography offense. Thus, we are not left with a definite and firm conviction that a mistake has been made, and the trial court's finding is not clearly erroneous.

■ Appellants' second point is based, at least in part, upon their contention that

"it is difficult to discern whether the trial court's holding was based on its incorrect factual finding that Anthony pled guilty to sexually based offenses against [I.P.]." As explained above, the trial court made no such finding. However, appellants also argue that the trial court erred in concluding that appellants lack the capacity to provide guidance to I.P. because of their willingness, absent a court order to the contrary, to allow her to visit her biological father in prison.

Anthony pled guilty to criminal conduct, including having child pornography on his home computer and second-degree sexual assault of appellee's older daughter, K.A. Norma Painter testified that, while her son had admitted to her that he had pornography, he denied assaulting appellee's older daughter despite his pleading guilty to the charge. Norma Painter's willingness to accept her son's refutation of his culpability, while perhaps understandable, is a factor the trial court could consider in making its determination regarding appellants' ability to provide guidance and care for the minor child.

Additionally, the grandparents' insistence that I.P. should visit her father in prison, despite the mother's express wishes to the contrary, undermines the parental role. Undermining the parental role is a factor for the court to rely upon in its determination of the best interests of the children. *See Potter v. Easley,* 288 Ark. 133, 703 S.W.2d 442 (1986) (finding no error in custody determination where it appeared, among other things, that father had sought to undermine the mother's parental authority in the eyes of her children); *see also Rambo v. Rambo,* 195 Ark. 832, 114 S.W.2d 468 (1938) (stating that to question the authority of the parent is to impair the peace and happiness of the family and undermine the wholesome influence of the home). Accordingly, we find no error in the trial court's determination that appellants failed to overcome the presumption that the mother's decision denying or limiting visitation was in the best interest of the child. *See Grant, supra.*

Neither do we find error with the trial court's conclusion that appellants failed to prove by a preponderance of the evidence that loss of their relationship with I.P. was likely to harm her. The evidence regarding the nature and frequency of the contact between appellants and the child was contradictory. Credibility determinations resolving inconsistent assertions are for the trial court to decide. *Grant, supra.* I.P. had no contact with appellants from May 2006 through the date of the hearing on January 3, 2008, and the mother testified that the child was well adjusted and happy with no problems in school. The mother further explained that she had witnessed no negative effects resulting from I.P.'s lack of contact with appellants. On this evidence, we are not left with a definite and firm conviction that a mistake has been committed.

In their final assertion of error, appellants claim that the trial court's incorrect holdings described in points two and three led to the trial court's incorrect conclusion that appellants failed to prove that their visitation with I.P. was in her best interest within the meaning of Arkansas Code Annotated section 9–13–103(c)(2)(B) and (e). As we find no error in the trial court's holdings on those points, neither do we find error in the trial court's ruling that appellants failed to rebut the presumption that the mother's denial or limitation of visitation was in the best interest of the child.

Affirmed.

KINARD and HENRY, JJ., agree.