

# ARKANSAS COURT OF APPEALS

DIVISION I
No. CV-16-1028

| | |
|---|---|
| HEATHER KIRBY f/k/a HEATHER SEMEYN<br>    APPELLANT/CROSS-APPELLEE | **Opinion Delivered** October 25, 2017 |
| | APPEAL FROM THE STONE COUNTY CIRCUIT COURT<br>[NO. 69DR-99-40] |
| V. | |
| | HONORABLE HOLLY L. MEYER, JUDGE |
| JEFFREY SEMEYN<br>    APPELLEE/CROSS-APPELLANT | AFFIRMED ON DIRECT APPEAL; REVERSED AND REMANDED ON CROSS-APPEAL |

**PHILLIP T. WHITEAKER, Judge**

Heather Kirby and Jeffrey Semeyn were divorced in January 2003. Heather was awarded custody of the parties' two children, and Jeffrey was ordered to pay child support. In April 2015, Heather filed a petition for an increase in child support and for arrears in child support. The Stone County Circuit Court granted her request for an increase in child support but denied her request for arrears. Both parties have appealed the court's order. Heather appeals the denial of her request for child-support arrearages, and Jeffrey cross-appeals the award of increased child support. He also appeals the trial court's award of interest and attorney's fees.

Our case law is well settled. We review domestic-relations cases de novo, but we will not reverse a trial court's finding of fact unless it is clearly erroneous. *Berry v. Berry*, 2017 Ark. App. 145, at 2, 515 S.W.3d 164, 166; *Hunter v. Haunert*, 101 Ark. App. 93, 270 S.W.3d 339

SLIP OPINION

(2007). A finding is clearly erroneous when, although there is evidence to support it, the reviewing court is left with a definite and firm conviction that the trial court has made a mistake. *Hunter, supra.* In reviewing a circuit court's findings of fact, we give due deference to the court's superior position to determine the credibility of the witnesses and the weight to be accorded to their testimony. *Brown v. Brown*, 373 Ark. 333, 284 S.W.3d 17 (2008); *Blalock v. Blalock*, 2013 Ark. App. 659. Based on this standard of review, we affirm on direct appeal and reverse and remand on cross-appeal.

Before addressing the specific arguments raised on direct appeal and on cross-appeal, we must consider certain provisions of the parties' divorce decree that are relevant to the arguments presented. Heather and Jeffrey entered into a property-settlement and child-custody agreement that was eventually incorporated into their divorce decree. At the time of the decree, Jeffrey was a student in medical school, but the parties anticipated that he would eventually graduate, begin and complete a residency, and then begin a medical practice. With this in mind, they designed the child-custody agreement to take care of their two children, one of whom has Down syndrome and will require a lifetime of care. With respect to support and maintenance of the children, Heather and Jeffrey agreed:

> 5. <u>Support and maintenance of the children.</u> [Jeffrey] shall pay child support in the amount of $407.40 per month beginning the 1st day of March, 1999 until he begins his medical residency. The same shall become due and payable on the 1st and 15th day of each month payable through the Clerk of Stone County Circuit Court, HC 71, Box 1, Mountain View, AR 72560.
>
> The obligation of [Jeffrey] to pay child support shall continue until said children have obtained the age of eighteen (18) years, graduates from high school, dies or marries, whichever event is the first to occur. However, due to the disabilities of the parties minor child, [JPS], child support shall continue during his lifetime. Child

2

support shall be computed annually and shall be commensurate with the Arkansas Child Support Chart.

The parties acknowledge that [Jeffrey] is in arrears in child support and medical/dental expenses. Said arrearage shall be computed at the time [Jeffrey] begins, or should begin, his medical residency. [Jeffrey] shall pay the sum of $300.00 per month for six (6) months and the sum of $400.00 per month for six (6) months thereafter in addition to the regular monthly child support payment to cure such child support arrearage. At the end of one (1) year from the date [Jeffrey] begins, or should begin, his medical residency, the existing balance shall be reevaluated and amortized over a period of four (4) years at the current interest rate for a loan of similar nature and he shall make monthly payment to pay said amount in full within forty-eight (48) months. [Jeffrey] shall compute the then current amount and supply calculations to the wife. Once the amount is agreed upon, then[Jeffrey] shall immediately have a proper petition and order prepared and entered at his cost reflecting the then current amount. If [Jeffrey] shall fail to do the above, then the wife may compute the amount and petition the court and all costs, expenses, and attorney's fees incurred by her shall be taxed to the husband and he shall immediately pay the same. If the then current amount is not agreed upon, then it shall be submitted to this court and all costs, expenses, and attorney's fees incurred shall be taxed to the party that was most in error on the computations.

It is contemplated by the parties that [Jeffrey] will not have the arrearage paid off at the time he begins his medical residency. At the time [Jeffrey] begins, or should begin, his medical residency, then the child support and medical/dental expense arrearage shall be ascertained and support at time shall be modified to the current amount that he should then owe according to the Arkansas Child Support Chart. An additional sum shall be added by agreement of the parties or by a court of competent jurisdiction in Arkansas, to alleviate the arrearage. It is contemplated by the parties that there may be more arrearage subsequent to the execution and entrance of the Decree of Divorce and such arrearage shall be computed at the time [Jeffrey] begins, or should begin, his medical residency and those amounts will be considered in computing the total arrearage that [Jeffrey] owes and shall be calculated in figuring the amount of monies he shall have to pay monthly to cure any arrearage.

In order to keep track of the amount of medical/dental and other healthcare related expenses, [Heather] shall provide [Jeffrey] copies of all billing statements. If [Jeffrey] objects to any such medical expense as being his liability in whole or in part, then he shall, within ten (10) days of receipt, contact [Heather] in writing of his objection to any disputed medical expenses. If [Jeffrey] has objected to any medial expense that is later held to be his expense, then he shall pay any and all court costs, attorneys fees, and other expenses related to this matter.

Each of the parties shall exchange tax returns annually. In the event that [Jeffrey] shall receive any type of income tax refund, then the same shall be paid to [Heather] and she shall credit said sum toward the amount of back child support arrearage.

. . . .

The custodial parent reserves the right to seek reevaluation of the child support required amounts to be paid by the non-custodial parent in the event that he were to gain a material increase in income of more than $100.00 per month, under the material change of circumstances of A.C.A. 9-14-107 of 1997 for bringing such cause of action.

The parties also agreed to set up a special-needs trust to provide for the care of JPS. With respect to the funding of the trust, they agreed in part to the following:

Debts, Insurance Obligations and Medical Expenses of the Children.

. . . .

The parties agree to establish a Trust Fund account for the minor child, [JPS], with each party putting three percent (3%) of their gross income into said Trust Fund account and the same shall start when [Jeffrey] begins his medical residency. The Trust Fund monies shall be used solely for the care, education, welfare, and well being of [JPS] so as to keep him in the same condition in life to which he has become accustomed. Each party shall purchase a policy of life insurance in the amount of $250,000.00 when [Jeffrey] begins his medical residency. The Trust Fund established for [JPS] shall be the owner and beneficiary of both life insurance policies.

We will now consider the arguments on appeal.

## I. *Direct Appeal*

As previously mentioned, Heather sought an increase in child support for JPS.[1] At the trial level, she argued that the child-custody agreement required annual computations of child

---

[1]Although JPS was emancipated at the time of the request for an increase in child support, Jeffrey was ordered to pay child support for JPS for life under the provisions of the decree. The parties' other child had reached the age of majority and was not the subject of any request for modification of child support herein.

support and contained an automatic escalation clause. She took the position that Jeffrey had a duty to annually look at his income and adjust his child-support obligation accordingly, which he did not do. Therefore, based on Jeffrey's income since the decree, he owed child-support arrears of approximately $255,000. Jeffrey denied that the child-custody agreement contained an escalation clause and argued that Heather's request was an improper attempt to obtain a child-support modification retroactively. He also argued that the doctrine of laches prevented Heather from prevailing on her claim.

The trial court found that the child-custody agreement did not contain an automatic escalation clause. The court stated that the provision relied on by Heather to support her claim of automatic escalation, taken in the context of the agreement, failed to unambiguously determine an amount certain; failed to set a time for annual computation of support or an effective date for any increase or decrease; failed to define which Arkansas Child Support Chart should apply; failed to address what circumstances or needs of either Jeffrey or the children should be considered in computing the amount; failed to define Jeffrey's income or how to compute it; and failed to define either a minimum or maximum support amount. As a result, the trial court declined to order child support to be set retroactively. Finally, the court indicated that the doctrine of laches barred Heather's claim due to her failure to obtain Jeffrey's tax returns or engage him in an attempt to recompute the child-support amounts.[2] Heather argues on direct appeal that the trial court erred in concluding that the decree and child-custody agreement did not unambiguously provide for the automatic adjustment of

_____

[2]The court's findings were initially expressed in a letter opinion filed August 17, 2016, and were later reduced to an order entered on September 9, 2016.

SLIP OPINION

child support on an annual basis. She further argues that the doctrine of laches did not bar her claim.

We do not find Heather's arguments persuasive for two reasons. First, the trial court was not clearly erroneous in its finding that the child-custody agreement did not contain an automatic-escalation clause. Admittedly, the child-custody agreement does state that child support shall be computed annually and shall be commensurate with the Arkansas Child Support Chart. However, it also states that the custodial parent reserves the right to seek reevaluation of the amount of child support required to be paid by the noncustodial parent in the event there was a material increase in income of more than $100 a month under the material-change-of-circumstances provision of Arkansas Code Annotated section 9-14-107 (Repl. 2015). Such a consideration would not be necessary if modification was automatic. Thus, it is not entirely clear from these provisions that the child-custody agreement anticipated that modifications would be automatic.

Second, the trial court was not clearly erroneous in its finding that the language of the child-custody agreement was imprecise. We recognized the concept of automatic increases of child support in *Brandt v. Brandt*, 103 Ark. App. 66, 286 S.W.3d 202 (2008), but we did so only when the language in the decree clearly provided for automatic increases. We refused to allow automatic escalation when a divorce decree contains no language providing for automatic increases and no mechanism for gathering income information. Here, as noted by the trial court, the decree did not set forth any guidelines for the reevaluation of child support.

 

It did not provide an annual date upon which support should be calculated, nor did it specify how income was to be computed or which chart should be used.

Because the trial court was correct in its determination that modification of child support was not automatic, we need not address Heather's argument regarding laches. The trial court's decision denying Heather's claim for arrearages based on automatic escalation is affirmed.

## II. *Cross-Appeal*

Jeffrey has filed a cross-appeal, raising two points: first, the trial court erred in its order directing an increase in child support; second, the trial court erred in its determination that his payments into the trust fund constituted child-support payments, resulting in an award of interest and attorney's fees on the arrearages.

## A. Child-Support Increase

The trial court entered an order modifying child support. The court calculated Jeffrey's child support for 2015 to be $2,835 a month based on his 2014 income. The court calculated Jeffrey's child support for 2016 to be $3,276 a month based on his 2015 income. Because Jeffrey paid $5,625 in child support from April 2015 through December 2015 and $2,500 from January 2016 through April 2016, the court found that he owed Heather $30,494 in arrears plus 10 percent interest on the arrears for that time period. Jeffrey argues on cross-appeal that there was no evidence in the record on which to support the trial court's modification of child support from the date of the petition and that the trial court's order violated Administrative Order No. 10. He is correct. We have no evidence in the record

before us of Jeffrey's 2015 income, which was the basis on which the court calculated the 2016 child-support obligation.[3]

Our analysis of Jeffrey's arguments begins with a review of the procedural history. Heather filed a petition alleging that Jeffrey's income had increased in an amount equal to or more than twenty percent or more than $100 a month, thereby constituting a material change in circumstances. She requested that the amount be modified to an amount commensurate with his current income and Administrative Order No. 10. Jeffrey answered, admitting that his child-support obligation should be modified. At the evidentiary hearing before the court, the parties agreed to exchange financial information and calculate the amount and present it to the court. The court asked, "So you're going to offer me '15 tax returns and ask me to calculate the amount of support?" Jeffrey's counsel responded, "No, Your Honor, I think we would actually do the calculation but I think we're going to be in agreement. What we are asking is that money be paid into the trust." Despite this statement from Jeffrey's counsel, the parties did not honor the commitment to the court, and no calculations were presented.

Administrative Order No. 10 requires child-support orders to contain the court's determination of the payor's income, recite the amount of support required under the guidelines, and recite whether the court deviated from the chart. Because there is absolutely no evidence in the record on which the trial court could base its award of child support for 2016, this order is facially deficient. We are left with a definite and firm conviction that a

---

[3]Although Jeffrey did not raise this argument below, it is still preserved for our appeal. An appellant does not need to challenge the sufficiency in a bench trial in order to preserve the issue for appeal. *Bohannon v. Robinson*, 2014 Ark. 458, at 5, 447 S.W.3d 585, 588.

mistake has been made. As a result, we reverse and remand to the trial court with instructions to complete the record with evidence of Jeffrey's 2015 income and for entry of an order in compliance with Administrative Order No. 10.[4]

## B. Trust–Fund Payments

As stated earlier, the parties have a child, JPS, who has special needs. They agreed to set up a trust for the benefit of JPS, with each party funding the trust with three percent of their gross income. Heather filed an amended petition with the trial court alleging, in part, that Jeffrey had failed to establish and fund the trust fund for JPS. Jeffrey answered, stating that he had retained counsel to set up the trust fund and that he would fund the trust as required by the child–custody agreement. Before the trial court, Jeffrey argued that his payments into JPS's trust fund should not be considered child support and subject to the statutory imposition of attorney's fees or interest on arrearages. He did, however, allege that Heather had failed to establish or fund the trust for JPS and requested that she should be held in contempt of court.

With regard to the trust fund, the trial court made several rulings. The trial court denied the contempt motion filed by Jeffrey but ordered the parties to establish a special–needs trust for JPS and for the trust to be funded as set forth in the child–custody agreement. The court ordered Heather to pay $12,903.20 into the trust and Jeffrey to pay $137,776.60 into the trust to satisfy their past–due amounts, plus interest. The trial court then held that the

---

[4]Arguably, Jeffrey invited the error that he raises on appeal by making commitments to the court that were not honored. Nevertheless, Administrative Order No. 10 mandates compliance not only for resolution of current child-support issues, but also for any future modifications (increase or decrease) related to change of income.

annual funds to the trust constituted child support and that interest on the past–due amounts was mandatory under Arkansas Code Annotated section 9-14-201. The trial court further found that Heather was entitled to an award of attorney's fees. The court held that attorney's fees were mandatory pursuant to Arkansas Code Annotated section 9-14-233(b), calculating the award based on the 2015 and 2016 support awarded and the amounts Jeffrey was ordered to pay into the trust fund. Jeffrey argues that the trial court erred in determining that his payments to the special-needs trust constituted child support (thereby requiring interest and allowing attorney's fees).

We are left with a definite and firm conviction that the circuit court made a mistake in its determination that the payments into the special–needs trust constituted child support. Child support is ordered under the statutes to provide for the support and maintenance of a child, including monetary support and health care. Ark. Code Ann. § 9-14-201(2). Here, the trust is clearly set up for the support of JPS, who is a child of the parties, but this alone does not make it "child support" as contemplated by the statutes. Statutorily, child support is paid by the noncustodial parent to the custodial parent, and the court determines the amount of child support after reference to the most recent revision of the family-support chart. Ark. Code Ann. § 9-14-106. The supreme court has directed that child support is calculated from the noncustodial parent's gross income minus proper deductions. *See* Ark. Sup. Ct. Admin. Order No. 10. Under the terms of the trust, however, both parents, custodial and noncustodial, were to pay into the trust with the trust payments calculated based on a set percentage of each of the parent's gross income and not based on the child-support charts.

10

Moreover, utilizing our de novo review, it does not appear the parties considered the trust payments as child support when they entered into the child-custody agreement. The parties drafted an agreement with a section captioned "Support and Maintenance of Children." Under this caption, the parties agreed that "child support" should be calculated and commensurate with the child-support charts. The provision establishing and funding the trust, however, is not contained under this section specifying the support and maintenance of the children and does not reference the child-support charts; instead, the trust agreement is discussed in the section captioned "Debts, Insurance Obligations, and Medical Expenses of Children" and is based solely on the gross income of the parties. Additionally, the agreement further states that if JPS should predecease Heather and Jeffrey, the remainder of the trust proceeds would be redistributed back to the parents—not a provision normally associated with child-support payments.

Because the trial court erred in its determination that the trust-fund payments constituted child support, the trial court's award of interest and attorney's fees on those amounts was likewise erroneous. Based on our determination that the trust-fund payments do not constitute child support, Jeffrey's argument that the trust-fund payments are a deviation from the child-support charts requiring explanation under Administrative Order No. 10 is moot. As for his arguments that he should be given credit for trust-fund payments in calculating his child support and that the statute of limitations limits the amount that could be awarded, he waived those issues because he did not raise these arguments below, and they are not properly preserved for appeal.



Affirmed on direct appeal; reversed and remanded on cross-appeal.

ABRAMSON and GLADWIN, JJ., agree.

*Murphy, Thompson, Arnold, Skinner & Castleberry*, by: *A.F. "Tom" Thompson III* and *Kenneth P. "Casey" Castleberry*, for appellant.

*Rose Law Firm, a Professional Association*, by: *Amanda K. Wofford*, for appellee.