2010 Ark. App. 196

**Robin MUNZNER, Appellant**

v.

**Angela Marie KUSHNER and Lisa Bolda, Appellees.**

**No. CA 09–879.**

Court of Appeals of Arkansas.

Feb. 24, 2010.

J. Douglas Gramling, Estes, Gramling & Estes, PLC, Fayetteville, for Appellees.

Rebekah J. Kennedy, Ed Tarvin, Ed Tarvin, Attorney at Law P.A., Bentonville, for Appellant.

KAREN R. BAKER, Judge.

Appellant Robin Munzner challenges the trial court's setting aside of a deed executed within a few days of the grantor's death asserting two points of error: (1) The trial court erred in holding that the confidential relationship of brother and sister shifted to brother/grantee the burden of proving capacity of sister/grantor to make a gift of real property where there was no showing that brother/grantee held a dominant position in the relationship or used his position as confidant to overcome the freewill of sister/grantor; (2) The trial court erred in holding that the deed was invalid due to incapacity of sister/grantor where brother/grantee came forward with testimony from multiple witnesses that sister/grantor had capacity and there was no evidence beyond speculation and conjecture that sister/grantor lacked capacity. We find no error and affirm.

On March 10, 2008, approximately 36 hours before her death, Bonnie Kehoe executed a deed to her home to her brother, appellant Robin Munzner. Appellee Angela Kushner, who is Ms. Kehoe's daughter and personal representative, brought this action asserting the invalidity of the deed in question. The deed was signed with an "X," explained through testimony as result of Ms. Kehoe being too weak to resume the signature of her name after she had lost her place. The deed also made a

different distribution of the property than Ms. Kushner had expected based upon previous conversations with her mother. Her action was combined with an action for unlawful detainer brought by Mr. Munzner to have appellee Lisa Bolda, Angela's sister, removed from the property.

Medical records of Ms. Kehoe and the deposition testimony of Dr. Gary Templeton, who was Ms. Kehoe's treating physician, were admitted into evidence at trial. This evidence showed that Ms. Kehoe suffered from pneumonia and advanced metastatic lung cancer that caused her to have fluid around her lungs and eventually led to her respiratory failure and death. Ms. Kehoe's physician described two methods used in treating her respiratory failure. One was a non-invasive ventilation. This procedure utilizes a machine that is similar to a ventilator, but instead of putting a plastic tube down the patient's throat, a mask is used that provides oxygen that decreases the work of breathing so that the patient can do some of the breathing on her own while maintaining ventilation. The second method involves sedating the patient for intubation where a plastic tube is inserted through the mouth and into the trachea so that the machine breathes for her by giving her oxygen levels at one hundred percent.

In addition to describing her treatments, Dr. Templeton also identified the medications administered to Ms. Kehoe on March 10, the day the deed in question was dated: morphine (a narcotic), methadone, Benzodiazepine (an anti-anxiety and sedating medicine, which he gave Valium as a commonly recognized example), Digoxin, (which can cause confusion) and a Fentanyl patch (a narcotic), which he described as a pain medicine similar to morphine but far more potent. The doctor testified that "[i]t would be extremely ill advised" to "make any sort of life changing decision or any major decisions while taking any of these medicines." He further expressed his opinion within a reasonable medical certainty that the impact of the medications would have impaired Ms. Kehoe's mental functioning sufficiently to have prevented her from meeting essential requirements for her safety and to protect her estate.

In testifying regarding his qualifications, Dr. Templeton described a one year internship in internal medicine, then two years' residency in internal medicine, followed by three years of a pulmonary and critical-care medicine fellowship. He identified his specialty as critical-care and pulmonary medicine with eighteen years experience in that specialty. He explained that his care for the critically ill often involved caring for patients who are unable to breathe without mechanical assistance.

The medical records further revealed that at around 5:00 p.m., when the deed was signed, Ms. Kehoe had an oxygen saturation level at or near 100%. Friends and relatives who spoke with Ms. Kehoe on March 10, 2008, testified that she was competent, as did her lawyer who had conferred with Ms. Kehoe regarding the deed. On March 11, 2008, Ms. Kehoe's condition deteriorated rapidly. She died in the early morning hours of March 12, 2008.

The trial court held that because Robin Munzner was Ms. Kehoe's brother and shared a close, confidential relationship with her, the burden was upon him to prove that his sister was competent to make a deed, particularly in light of the lack of consideration for the deed. However, the trial court ultimately found that its finding that the burden of proof had shifted was not determinative of the matter. The determining factor was the fact that Ms. Kehoe's medical condition ren-

dered her too mentally impaired to be competent to execute the deed. Based upon Ms. Kehoe's lack of capacity, the trial judge ordered that the deed be set aside.

The standard of review of a circuit court's findings of fact after a bench trial is whether those findings are clearly erroneous. *See First Nat'l Bank of Izard County v. Garner*, 86 Ark.App. 213, 167 S.W.3d 664 (2004). A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *See id.* In reviewing a trial court's findings of fact, we give due deference to the trial judge's superior position to determine the credibility of witnesses and the weight to be accorded to their testimony. *See Holaday v. Fraker*, 323 Ark. 522, 920 S.W.2d 4 (1996).

Appellant urges this court to reverse the trial court arguing that the trial court erred in shifting the burden of proof to the brother and grantee of the deed to prove capacity of the sister and grantor where there was no showing that the brother held a dominant position in the relationship or used his position as a confidant to overcome the free will of the sister.

■ While the trial judge did state in its ruling from the bench that he believed the burden of proof shifted to appellant, he actually relied upon the testimony of Ms. Kehoe's treating physician regarding the severity of the impairment of her mental capacity caused by the medications. The court found that her medical condition and the medications used in treating her condition affected Ms. Kehoe's mental functioning to the point where she was not competent to sign the deed on March 10, 2008. The court further found that the proof presented by appellees was a clear and convincing level of proof, more than a mere preponderance that Ms. Kehoe was not capable or competent to execute the deed.

The trial court in this case placed a significant amount of weight on the credibility of the witnesses, particularly relying upon the testimony of Dr. Templeton, Ms. Kehoe's treating physician. The doctor opined that she was incompetent saying that, knowing her weakened state and also the medication that she was on at the time, he believed the impact of these impairments would have prevented her from meeting essential requirements for her safety and to protect her estate.

■ The trial court commented that while it was convinced that the burden of proof shifted to appellant regarding the issue of undue influence, it doubted that this finding had any effect on its ultimate decision—that Ms. Kehoe was not competent to execute the deed. We agree that under the facts of this case, the trial court's determination that Ms. Kehoe was rendered mentally incapable of executing the deed by her medical condition and medications is not affected by the trial court's disposition of a claim of undue influence.

Paragraph three of the order setting aside the deed provides as follows:

> The Court further finds, that even without consideration of the "shift" of the burden of proof and placing the burden upon defendant to prove capacity of the grantor, Bonnie Eloise Kehoe nee Munzner, at the time of executing the Deed, that there was presented clear and convincing evidence provided by the petitioner ... that Bonnie did not have the capacity to execute the deed at issue at the time of its execution. Specifically, the Court places significant weight upon the testimony of the treating physician, Dr. Gary Templeton concerning the mental status of the grantor, Bonnie

Eloise Kehoe nee Munzner, was under such narcotics and other drugs affecting the mental ability, that [she] was in such a weakened state that she did not have the requisite mental capacity under Arkansas law to execute the Deed on the 10th day of March, 2008....

█ The determination of whether a deed is void because of the mental incapacity of the grantor is measured by his or her mental ability at the time of the execution of the deed. *Andres v. Andres,* 1 Ark.App. 75, 83, 613 S.W.2d 404, 409 (1981). If the grantor is mentally competent at the time he executes the deed at issue, the deed is valid. *Id.*

█ |₇Appellant's argument focuses on the premise that the proof was insufficient for the trial court to find that Ms. Kehoe's will was overcome by appellant's influence. In the case of *Kelly's Heirs v. McGuire,* 15 Ark. 555 (1855) (citing 1 Story's Eq. 234), the court announced that if one is "of such great weakness of mind, as to be unable to guard himself against imposition, or to resist importunity or undue influence, a contract, made by him under such circumstances, will be set aside. And it is not material from what cause such weakness arises. It may be from temporary illness, general mental imbecility, ... the infirmity of extreme old age...." The fact that a grantor is old and in feeble health is a circumstance bearing on the question of mental capacity as is gross inadequacy of price. *Campbell v. Lux,* 146 Ark. 397, 225 S.W. 653 (1920), *McEvoy v. Tucker,* 115 Ark. 430, 171 S.W. 888 (1914). Each case presenting a question of a grantor's mental capacity is to be decided on its own particular facts and circumstances. *See Watson v. Alford,* 255 Ark. 911, 503 S.W.2d 897 (1974).

However, the trial court's ultimate decision was that Ms. Kehoe's mental impairment was debilitating to the point that she was unable to function in a capacity to execute the deed. This lack of capacity was due to her medical condition and the medications. This lack of capacity stands independent of the court's finding that her weakness of mind made her susceptible to a claim of undue influence.

|₈The facts and circumstances of this case demonstrate sufficient evidence from which the trial court could find that Ms. Kehoe lacked the mental capacity due to her medical condition and medications to execute the deed to appellant. The testimony of Ms. Kehoe's physician, upon which the trial court placed great weight, supports the trial court's finding. Credibility determinations resolving inconsistent assertions are for the trial court to decide. *Painter v. Kerr,* 2009 Ark. App. 580, 336 S.W.3d 425. Therefore, the determination of undue influence and the shift of the burden of proof regarding that influence does not affect the trial court's ultimate decision that Ms. Kehoe was legally incapable of executing the deed.

Accordingly, we find no error and affirm.

PITTMAN and HENRY, JJ., agree.