2011 Ark. App. 191
**Danny Wayne FLIPPEN, Appellant**

v.

**Michael R. JONES and Denise A. Jones, Appellees.**

No. CA 10–601.

Court of Appeals of Arkansas.

March 9, 2011.

Roy R. Gean III, Fort Smith, for appellant.

Philip Anthony Bagby, Van Buren, for appellees.

JOHN B. ROBBINS, Judge.

Appellant Danny Wayne Flippen appeals the order of the Sebastian County Circuit Court that granted the request of appellees Michael and Denise Jones to have Danny specifically perform his contract to purchase Michael's house and that denied Danny's request to have the purchase contract rescinded.[1] Danny asserts the following points for reversal: (1) that the trial court clearly erred in ordering specific performance where Danny had an equitable right to rescind based upon Michael's fraudulent failure to disclose certain defects and an absolute contractual right to rescind; and (2) that even if specific performance were warranted, the trial court clearly erred in rejecting Danny's claim that Michael failed to mitigate his damages. We disagree with Danny's arguments and affirm.

In 2004, Michael purchased a residence located in Fort Smith, Arkansas. The home was built in approximately 1980. During 2008 and 2009, Michael listed the property for sale with realtor Sue Vines of Ron Calhoun and Associates.

In marketing the property, Michael completed a Seller's Property Information Disclosure Statement and a list of repairs during his ownership for view by potential home buyers. The Disclosure included questions regarding known defects, and Michael marked "no" when asked if he was aware of "prior or existing major structure defects" and "any cracks or settlement in slab, foundation or mason." But, in the line spaces underneath that section, Michael wrote, "There has been some settling on property & deck. Repairs made to property & deck." A typed list of prior repairs accompanying this Disclosure stated that, "TO CORRECT SETTLING OF THE DECK SUPPORTS WERE ADDED AND THE DECK WAS SHIMMED TO SOME SUPPORTS THAT HAD SETTLED."

Danny executed a written offer to purchase the property on January 15, 2009, for $225,000, but Michael countered for a price of $230,000, which was accepted on January 16. The terms of the accepted offer included the right to a ten-day window within which Danny could employ a home inspector to fully examine the property. The inspection clause included a $500 repair limit, which meant that if repair costs exceeded $500, Danny had the option to either accept the property as is with a $500 credit at closing, or terminate

---

1. Denise Jones is a named party and appellee, but she did not participate actively in any fashion with regard to this cause of action. While she and Michael Jones remained married, she did not reside in the residence, her name was not on the title, and she permitted Michael to act on her behalf with regard to any matters concerning the residence. For clarity, we will only refer to Michael in the body of this opinion.

the contract and recover his earnest money. The offer included a provision that Danny would have the right to re-inspect all the inspection items immediately prior to closing to determine whether they were in normal working order and to determine whether all the requested and accepted repairs had been made.

Danny hired Lauren Tippett to perform the home inspection. Tippett provided Danny with a report of potential problems including trim separating from the master bedroom wall indicating settling, mold and mildew around an upstairs vent, a leak in the swimming pool, a jack left underneath the house, evidence of new cement pads and beams under the house, cracks in the masonry walls on the west side of the house, unsafe electrical lights hanging underneath the deck, and structural support lacking under the deck. Tippett made a handwritten list of these findings for Danny and specifically told Danny that he should employ an engineer to determine if the home was sufficiently repaired with regard to the structural issues.

Danny did not employ an engineer, but at the end of January, he tendered a list of requested repairs that included items such as the pool, the sprinkler system, and wallpaper, but not the structural issues. The requested repairs far exceeded $500. Michael's response was to tender a General Addendum on February 3 that reduced the purchase price to $223,000 (a $7000 reduction in lieu of the majority of pool repairs), required Michael to be responsible to pay Luther Stem Pools & Spa for a repair job not to exceed $1,028.18, required Michael to be responsible for the sprinkler and wallpaper issues, and set closing for February 20. Danny signed the Addendum later that day on February 3, accepting those terms.

On February 6, Michael signed a six-month apartment lease. Danny returned to the property on February 9 to look over the house with his girlfriend and her daughters. On that viewing, Danny decided he wanted to walk away from the transaction. On February 10, Danny had Vines prepare a Termination of Real Estate Contract Addendum, which he signed, wherein he was prepared to forfeit his $500 earnest-money deposit to Michael. No reasons for termination were stated. Michael did not accept those documents as an agreement on termination.

Michael filed suit for specific performance on February 26. Danny answered and (1) sought rescission based upon Michael's actual or constructive fraud in failing to disclose material defects in the home and based upon his contractual right to rescind prior to closing, and (2) asserted the defense of Michael's failure to mitigate any alleged damages. Danny filled out another Termination of Real Estate Contract Addendum, which he sent by facsimile to Vines on March 2 but not to Michael. In that form, Danny sought return of his $500 earnest-money deposit, listing several reasons for termination, none having any relation to the initial list of repairs tendered to Michael. Danny filed amended answers in March and July in opposition to Michael's complaint. The case was tried to the bench.

The parties each testified about the course of events leading to the lawsuit. Danny's primary contention was that Michael's disclosures did not reveal the seriousness of the structural problems and cracking in the masonry. Danny testified that had he known of the severity of those particular problems, he would not have purchased the home at any price. But, Danny also testified that his inspector told him he needed to hire an engineer to determine with certainty whether the repairs to date had remedied the problems

**698**

with foundation support and settling, which he simply chose not to do.

The circuit judge found in favor of Michael on specific performance because there lacked any actual or constructive fraud. Specifically, the judge found that Michael revealed settling in his disclosures to prospective buyers; Danny's home inspector noted the precise foundational issues Danny later contended were concealed from him; Danny chose not to heed his inspector's recommendation to have an engineer inspect the structural issues to determine the home's soundness; and even so, Danny went forward instead of terminating the contract at that time. The judge noted that Danny did not list any structural issues in his repair addendum tendered to Michael. The judge found Danny's testimony at the hearing in direct conflict with the evidence—that being Danny's claim at the hearing that he would not have offered to purchase the house if he had known of the masonry and foundation issues.

The judge found that Danny's specifically requested repairs were addressed in the General Addendum upon which he and Michael agreed. He noted that although the form contract contained boilerplate language providing a right to re-inspect prior to closing, he found that it applied to the initial repairs requested and was "not designed to be a never-ending series of inspections which require continued expense by a seller with no ability to trust a buyer to follow through with a purchase."

The judge awarded Michael $896.28 for real estate taxes paid, $1620 for unnecessary apartment rental, $1504.44 for mortgage interest, and 6% in prejudgment interest. The judge rejected Danny's claim that Michael was duty-bound to mitigate his damages by attempting to sell the residence to another buyer, finding that no such duty arises in a specific-performance case related to the sale of real estate until a judicial determination is made that specific performance will not be granted. Danny appeals.

On appeal from a bench trial, we review the findings of the trial court de novo, but we do not reverse unless the findings are clearly erroneous or clearly against the preponderance of the evidence. *Munzer v. Kushner,* 2010 Ark. App. 196, at 4–5, 375 S.W.3d 647. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *Id.* We give due deference to the trial judge's superior position to determine the credibility of the witnesses and the weight to be accorded to their testimony. *Id.*

Specific performance is an equitable remedy compelling performance of a contract on the precise terms agreed upon by the parties. *Elder Constr. Co. v. Lane,* 2010 Ark. App. 10, at 3–4, 370 S.W.3d 861. Because it is grounded in equity, trial courts have some latitude of discretion in granting or denying that relief, depending upon the inequities in a particular case. *McIllwain v. Bank of Harrisburg,* 18 Ark. App. 213, 713 S.W.2d 469 (1986).

Danny contends that he presented a compelling case of fraud on Michael's part in making false representations about the foundation and structural nature of the home. Even assuming that Michael misrepresented the condition of the home, we agree with the trial court that Danny could not have justifiably relied on that representation, nor was he damaged as a result. Justifiable reliance and resulting damages are required elements in a fraud case. *Knight v. Day,* 343 Ark. 402, 36 S.W.3d 300 (2001).

Danny learned through his own professional inspector's report of the existence of potential structural and foundational issues, and he was urged to hire a professional engineer to determine whether the structure was sound or needed further repair. Danny had the option to terminate the contract or request those then-well-known potential structural issues to be repaired. Instead, Danny chose to go forward, renegotiating to a lower price and accepting Michael's offer to repair other items Danny deemed important to fix prior to closing—namely the pool, the sprinkler system, and the wallpaper. And Michael rented an apartment in reliance on the agreed terms. *See Bharodia v. Pledger,* 340 Ark. 547, 11 S.W.3d 540 (2000) (estoppel may be asserted if seller acts in reliance on buyer's expression of intent to purchase). Danny's attempt to rely on an arguably vague owner's disclosure as an "out" is not compelling. This issue required resolution by the trial court's weighing the equities, and Danny could not establish that he was fraudulently induced to agree to buy this house. We hold that the trial court did not clearly err in so finding.

As to the duty to mitigate, we hold that the trial court correctly determined that this duty did not arise pursuant to the *McIllwain* opinion. Danny does not present any legal authority on point to contradict this statement of the law in Arkansas. Nor does Danny specifically take issue with the particular categories or amounts awarded as damages. We hold that the trial court correctly found that Michael did not have a duty to mitigate prior to a determination of whether specific performance of this real estate sale would be ordered.

After our de novo review, we are not left with a distinct and firm impression that a mistake was committed in granting this equitable remedy to Michael. We, therefore, affirm the trial court's decision.

Affirmed.

PITTMAN and GRUBER, JJ., agree.