

SLIP OPINION

Cite as 2014 Ark. App. 143

# ARKANSAS COURT OF APPEALS

DIVISION I
No. CV–13–459

| | |
|---|---|
| RHONDA CLEGG and CHARLENE SULLIVAN SWAIMS | **Opinion Delivered** February 26, 2014 |
| APPELLANTS | APPEAL FROM THE FAULKNER COUNTY CIRCUIT COURT [NO. CV-2010-725] |
| V. | |
| RANDALL SULLIVAN and CAROLYN MOORE | HONORABLE MICHAEL A. MAGGIO, JUDGE |
| APPELLEES | AFFIRMED |

**ROBIN F. WYNNE, Judge**

Rhonda Clegg and Charlene Sullivan Swaims appeal from the circuit court's order granting the appellees' complaint to set aside a warranty deed executed by Charles Sullivan. They argue that the trial court clearly erred in finding that Charles lacked the requisite mental capacity to execute the January 2010 deed. We affirm the order of the circuit court.

The grantor, Charles, had three living children: appellant Charlene and appellees Randall Sullivan and Carolyn Moore. Appellant Rhonda is Charlene's daughter. During his life, Charles acquired approximately 226.77 acres of real property in Faulkner County. He died in February 2010, at the age of ninety-four, just over a month after executing the warranty deed at issue in this case.[1] The warranty deed, dated January 6, 2010, was executed

---

[1]His wife Jewell owns the property on which her and Charles's home was located, and that property is not at issue.

by Charles and his wife Jewell and granted to Charlene and Rhonda 226.77 acres for the sum of $50,000 ($1500 cash in hand, with the remaining $48,500 to be paid in monthly installments of $500 with an interest rate of 5.5% per annum), with a life estate reserved in Charles and made subject to the rights of Randall and Carolyn to continue residing on the one square acre surrounding their respective mobile homes until such time as he or she vacated the property. The warranty deed was executed on the same day as Charles's last will. Previous wills, executed in 1999 and 2009, had provided that each of the three children would be vested with the respective shares of the property upon which they resided (per the 2009 will, approximately 61 acres to Randall, 70 acres to Carolyn, and 97 acres to Charlene).

After Charles's death on February 8, 2010, appellees filed a complaint to set aside the deed on the grounds that Charles was not competent to execute the deed due to his advanced age and declining mental health or, alternatively, that he was the victim of undue influence "because of the unreasonable and illogical terms of this transaction and the gross inadequacy of the consideration exchanged." A bench trial was held on February 5 and 6, 2013. In its order setting aside the deed, the trial court found as follows:

> Several of Charles Sullivan's acquaintances testified at trial that they had noticed that Charles Sullivan's mental health had declined markedly in the several months before his death. There was testimony that he had trouble recalling the names of his friends and family members and that he could no longer remember familiar events that had happened in the past.
>
> Dr. David Lipschitz's testimony from his deposition was introduced at trial. Dr. Lipschitz testified that he saw Charles Sullivan quite frequently in the months preceding his death. He noted that Mr. Sullivan was experiencing hallucinations, had trouble recalling names, faces of familiar people, would get lost in familiar places, had trouble with word finding, would lose his train of thought, had poor concentration and focus, increased confusion, slowed cognition, paranoia, impairment with decision making, and increased depression. Dr. Lipschitz's patient notes on Charles Sullivan

were consistent with the above symptoms from July of 2009 thru December of 2009. Dr. Lipschitz further stated in his deposition that he "would say anybody over the age of 80 is . . . subject to influence" and that "we always have to understand that people who get older are vulnerable. They're vulnerable to financial scams and they're vulnerable to abuse. And people who have memory loss are substantially more likely to be taken advantage of." Dr. Lipschitz was unable to diagnose Mr. Sullivan without neuropsychologic testing, but based on what he had seen, he guessed that Charles Sullivan suffered from the Lewy body variant of Alzheimer's. Dr. Lipschitz was also of the opinion "that by the time they [his family] were requesting a will change, he [Charles Sullivan] was not cognitively cable [*sic*] of being independent" and "his illness [was] too advanced to make independent decisions."

Before the Warranty Deed was executed, William Adkisson, the attorney who prepared the deed and wills, recommended to Charles Sullivan's family that Mr. Sullivan go to a doctor to be declared competent before any document execution. By his own testimony, William Adkisson expected a controversy and was aware that competency would likely be an issue. An appointment for testing had been made, but the family cancelled it because Charles Sullivan was in too poor of health to be tested for competency. Regardless, an appointment was made with attorney Adkisson to execute the warranty deed in question and Charles Sullivan's last will and testament. Charles Sullivan was accompanied by his wife Jewell Sullivan, daughter Charlene Sullivan Swaims, and granddaughter Rhonda Clegg at the attorney's office.

Mr. Adkisson stated that Charles Sullivan's wife, Jewell Sullivan, was the "interpreter," and did all of the talking for Mr. Sullivan. It is undisputed that at the time of the execution of the deed and last will and testament that Charles Sullivan's speech was not good, that he could not hear, and that Jewell expressed his intentions for him. Marilyn Ruple, notary public for the deed, testified that she recalls Charles Sullivan being unable to sign the deed himself; that his wife steadied, or guided, Mr. Sullivan's signature.

There was also testimony at trial that land similarly situated has been purchased or sold at a minimum of $1,000.00 an acre to upwards of $10,000.00 an acre. The plaintiffs' complaint alleges that a 2010 appraisal of the 226.77 in question valued the land at approximately $7,000 per acre, an aggregate value upwards of $1,500,000.00. The deed in question conveyed the land for consideration of $50,000.00, or $220.49 per acre.

Upon review of the parties' pleadings, exhibits, arguments, and weighing the credibility of the testimony before it, this Court finds that the deed executed on January 6, 2010 by Charles Sullivan should be and hereby is set aside due to the grantor's mental incapacity at the time of the execution.

Appellants filed a timely notice of appeal on February 28, 2013.

SLIP OPINION

The determination of whether a deed is void because of the mental incapacity of the grantor is measured by his or her mental ability at the time of the execution of the deed. *Munzner v. Kushner*, 2010 Ark. App. 196, at 6, 375 S.W.3d 647, 651 (citing *Andres v. Andres*, 1 Ark. App. 75, 83, 613 S.W.2d 404, 409 (1981)). If the grantor is mentally competent at the time he executes the deed at issue, the deed is valid. *Id.* The test of mental competency to execute a deed was set forth by our supreme court in *Donaldson v. Johnson*, 235 Ark. 348, 359 S.W.2d 810 (1962), as follows:

> If the maker of a deed, will, or other instrument has sufficient mental capacity to retain in his memory, without prompting, the extent and condition of his property, and to comprehend how he is disposing of it, and to whom, and upon what consideration, then he possesses sufficient mental capacity to execute such instrument. Sufficient mental ability to exercise a reasonable judgment concerning these matters in protecting his own interest in dealing with another is all the law requires. If a person has such mental capacity, then, in the absence of fraud, duress, or undue influence, mental weakness, whether produced by old age or through physical infirmities, will not invalidate an instrument executed by him.

*Id.* at 352, 359 S.W.2d at 813 (citations omitted). The mental capacity of the maker of a trust or deed is presumed, and the burden rests on the contestants to prove incapacity by a preponderance of the evidence.[2] *Rose v. Dunn*, 284 Ark. 42, 46, 679 S.W.2d 180, 183 (1984).

This court reviews matters in equity de novo on the record. The standard of review of a circuit court's findings of fact after a bench trial is whether those findings are clearly erroneous. *Munzner, supra.* A finding is clearly erroneous when, although there is evidence to

---

[2]Appellants cite *Braswell v. Brandon*, 208 Ark. 174, 185 S.W.2d 271 (1945), for the proposition that cancelling a deed requires "clear, cogent and convincing" evidence. In fact, *when it is contended that a deed was obtained by duress or undue influence*, the law requires that the proof be clear, cogent, and convincing before the deed can be set aside. *See Thorn v. Pierson*, 2011 Ark. App. 206, at 2. Here, the deed was not set aside based on a finding of undue influence, so the burden was by a preponderance of the evidence.

support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *Id.* In reviewing a trial court's findings of fact, we give due deference to the trial judge's superior position to determine the credibility of witnesses and the weight to be accorded to their testimony. *Id.*

Appellants contend that the relevant evidence presented at trial showed that Charles did have the mental capacity to execute the warranty deed. They cite several cases, including *Cullins v. Webb*, 208 Ark. 631, 187 S.W.2d 173 (1945), and *Andres*, 1 Ark. App. 75, 613 S.W.2d 404, for the proposition that it is the grantor's mental capacity *at the time the deed is executed* that is relevant to whether he had the requisite mental capacity. Appellants point to the testimony of Jewell, attorney Bill Adkisson, and Adkisson's longtime secretary Marilyn Ruple, as well as their own testimony, that Charles possessed the requisite mental capacity on the day the deed was executed. They contend that the trial court failed to credit this relevant testimony and instead relied on testimony that was irrelevant because those witnesses had not observed Charles on the day the deed was executed or even within a reasonable proximity to that time. The trial court, however, was not required to credit the testimony of appellants' witnesses.

On this record, giving the proper deference to the trial court's weighing of the credibility of the witnesses, we cannot say that the trial court clearly erred in finding that appellees had proved Charles's mental incapacity by a preponderance of the evidence. Therefore, we affirm.

Affirmed.
PITTMAN and BROWN, JJ., agree.
*James Gregory Crumpton*, for appellants.
*Daniel W. Marvin*, for appellees.