

# ARKANSAS COURT OF APPEALS

DIVISION IV
No. CV–14–36

| | |
|---|---|
| LINDA FAY MARSTON, PATSY ELLIFRITZ, WANDA GAIL GRAGG, and DENNIS WAYNE TAYLOR<br><br>APPELLANTS<br><br>V.<br><br><br>JAMES TAYLOR, DIANE CRIMS, and JOANN MORGAN<br><br>APPELLEES | **Opinion Delivered** March 11, 2015<br><br>APPEAL FROM THE CRAWFORD COUNTY CIRCUIT COURT [NO. 17-CV-2012-424]<br><br><br>HONORABLE GARY COTTRELL, JUDGE<br><br>AFFIRMED |

## PHILLIP T. WHITEAKER, Judge

This litigation involves a dispute between seven siblings over the distribution of the proceeds of a sale of real property. The appellants, Linda Fay Marston, Patsy Ellifritz, Dennis Taylor, and Wanda Gragg, appeal from an order of the Crawford County Circuit Court awarding a money judgment in favor of the appellees, James E. Taylor, Diane Crims, and Joann Morgan. The appellants assign error to the circuit court's order awarding the judgment and directing them to pay the judgment or face incarceration for contempt. As to the first point, we find no error and affirm; as to the second point, we conclude that the issue is not preserved for our review.



I. *Background*

Both the appellants and the appellees are the children of Gurtie Taylor, who was the owner of the real property at issue. In February 2012, Gurtie executed a deed granting her real estate to the appellants. Gurtie passed away in June 2012 of end-stage Alzheimer's, a diagnosis first received in 2009.

After Gurtie's death, the appellees filed a motion to set aside the deed based upon allegations of Gurtie's incapacity to execute the deed and allegations of undue influence in the procurement of the deed by Marston. Upon learning that Marston and the other siblings had sold the real estate that was the subject of the deed for $45,000, the appellees filed an amended complaint and motion for injunctive relief. The appellees sought a temporary order from the court directing that the appellants jointly and severally deposit the proceeds of the sale into the registry of the court while the action was pending. The court granted their temporary request. When the appellants did not pay the proceeds of the sale into the registry of the court, the appellees filed a petition for body attachment, asking that the appellants be held in contempt and incarcerated until such time as the sale proceeds were deposited into the court's registry.

The matter proceeded to a bench trial. At the conclusion of the trial, the court determined that Gurtie lacked the mental ability to execute the deed and found in favor of the appellees. Because the property had already been sold, the court concluded that it could not set aside the deed, but it awarded the appellees $22,500, representing half of the sales price of the property. Moreover, the court held each of the appellants in contempt for failing

SLIP OPINION

to comply with the court's earlier order to deposit the proceeds of the sale into the registry of the court. The court ordered that the money judgment be paid within sixty days, but it stated that the appellants could purge themselves of contempt if they paid the judgment within that time. The appellants filed a timely notice of appeal from that order.

## II. *Mental Capacity of Grantor*

In their first argument on appeal, the appellants assert that the circuit court erred in finding that Gurtie lacked the mental capacity to execute the deed. We will not reverse this finding of fact by the circuit court unless the finding is clearly erroneous. *Clegg v. Sullivan*, 2014 Ark. App. 143. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *Id*. We have reviewed the entire evidence in this matter, and we are not convinced that a mistake was made or that the circuit court's finding was clearly erroneous.

The circuit court received Gurtie's medical records into evidence. Undisputedly, Gurtie was diagnosed with Alzheimer's and dementia. The medical records reflected that Gurtie was frail in appearance, confused, and disoriented. In October 2011, just four months prior to the execution of the deed, her doctor found that Gurtie was "forgetting a lot more" and "getting worse in her dementia." Gurtie's physician repeatedly noted her confusion and anxiety, as well as her increasing difficulties speaking and swallowing. Gurtie's general appearance was described as "frail" with a "flat affect" and a "confused" mental state. In early February 2012, shortly before the execution of the deed, the medical reports noted that

3

SLIP OPINION

Gurtie complained of not being able to feel the inside of her mouth, and her daughter was "worried that she is having mini-strokes." That same report again described Gurtie as confused and disoriented, with slow speech.

In addition to the medical evidence, the court heard from several witnesses. The witnesses for the appellants saw very little impact upon Gurtie's decision-making capacity due to her Alzheimer's and dementia. The witnesses for the appellees saw a great deal of impact upon Gurtie's decision-making capacity due to her Alzheimer's and dementia. It is the role and duty of the trier of fact to determine the credibility of witnesses and the weight to be accorded to their testimony. We give due deference to the trial court's superior position in this regard. *Browning v. Browning*, 2015 Ark. App. 104.

The determination of whether a deed is void because of the mental incapacity of the grantor is measured by his or her mental ability at the time of the execution of the deed. *Munzner v. Kushner*, 2010 Ark. App. 196, at 6, 375 S.W.3d 647, 651 (citing *Andres v. Andres*, 1 Ark. App. 75, 83, 613 S.W.2d 404, 409 (1981)). If the grantor is mentally competent at the time he executes the deed at issue, the deed is valid. *Id*. The test of mental competency to execute a deed was set forth by our supreme court in *Donaldson v. Johnson*, 235 Ark. 348, 359 S.W.2d 810 (1962), as follows:

> If the maker of a deed, will, or other instrument has sufficient mental capacity to retain in his memory, without prompting, the extent and condition of his property, and to comprehend how he is disposing of it, and to whom, and upon what consideration, then he possesses sufficient mental capacity to execute such instrument. Sufficient mental ability to exercise a reasonable judgment concerning these matters in protecting his own interest in dealing with another is all the law requires. If a person has such mental capacity, then, in the absence of fraud, duress, or undue

SLIP OPINION

influence, mental weakness, whether produced by old age or through physical infirmities, will not invalidate an instrument executed by him.

*Id.* at 352, 359 S.W.2d at 813 (citations omitted). The mental capacity of the maker of a trust or deed is presumed, and the burden rests on the contestants to prove incapacity by a preponderance of the evidence. *Munzner, supra* (citing *Rose v. Dunn*, 284 Ark. 42, 46, 679 S.W.2d 180, 183 (1984)).

The appellants contend that the circuit court erred in "failing to recognize that a grantor could execute a deed during a lucid interval and disregarded the greater weight of the evidence regarding the decedent/grantor's lucidity." They note the testimony of Marston; Chuck Dyer, the attorney who prepared the deed; and Joyce Parker, Gurtie's nursing assistant, who all asserted that Gurtie seemed possessed of her mental faculties at the time of the execution of the deed. The appellants stress that Dyer and Parker, who were uninterested in the property itself, testified that Gurtie possessed sufficient mental capacity during the execution of the deed; they contend that the circuit court therefore erred in giving greater weight to the medical records than it did to these two "unbiased witnesses."

The circuit court acknowledged that there had been contradictory testimony about Gurtie's mental state at the time she executed the deed; however, it also placed great weight on the medical evidence before it. Based on its assessment and balancing of the evidence, the court concluded that the testimony regarding Gurtie's "good days" did not outweigh the evidence of Gurtie's lack of capacity. Credibility determinations resolving inconsistent assertions are for the trial court to decide. *Munzner, supra* (citing *Painter v. Kerr,* 2009 Ark. App. 580, 336 S.W.3d 425). Thus, giving the proper deference to the trial court's weighing

5

of the credibility of the witnesses, *see Clegg*, *supra*, we are unable to say that the trial court clearly erred in finding that appellees had proved Gurtie's mental incapacity by a preponderance of the evidence. We therefore affirm the circuit court on this point.

### III. *Contempt*

In their second point on appeal, the appellants argue that the circuit court erred in ordering them to pay the judgment within sixty days or face incarceration. As mentioned above, the court entered a restraining order in August 2012, directing the appellants to jointly and severally deposit the proceeds of the sale into the registry of the court while the action was pending. By the time of trial in May 2013, the appellants still had not deposited the funds into the court's registry, insisting that they could not do so because they had already spent the proceeds from the sale of the property. At the end of the trial, the court held each of the appellants in contempt for failing to comply with its earlier order. The court ordered that the money judgment be paid within sixty days, but it stated that the appellants could purge themselves of contempt if they paid the judgment within that time. If they did not do so, however, the court announced that it would sentence each one of them to thirty days in jail for their contempt.

The circuit court's order awarding judgment to the appellees was entered on August 5, 2013. The order recited the court's contempt findings and sanctions, noting that if the appellants did not pay the judgment "within sixty days of the date of this Order, then each will be committed to the Crawford County Detention Center for a period of thirty days." On September 23, 2013, the circuit court issued an order for body attachment, directing that

SLIP OPINION

Dennis Taylor, Linda Marston, Patsy Ellifritz, and Wanda Gragg be committed to the Crawford County Detention Center for thirty days for contempt of court. The court again noted that the appellants could purge themselves of the contempt by paying the total sum of the judgment.

On October 2, 2013, the appellants filed a motion for stay of judgment and to recall the body attachment, arguing that the judgment had not been entered until August 5, and the sixty days for paying the judgment had not expired by the time the body attachment was issued. In their motion and the accompanying brief, the appellants raised several arguments. Primarily, the appellants contended that the circuit court had not given them the full sixty days from the date of the entry of the order to pay the judgment; in addition, they asserted that putting them in jail for failure to pay a judgment was akin to criminal contempt, and they had not been afforded their necessary due-process rights. Appellants also asserted that Wanda Gragg, who had been incarcerated, should have been given the opportunity to demonstrate that she was unable to afford to pay the judgment and that her failure to comply was thus not willful. These are the same arguments that are made in the appellants' brief on appeal.

We are unable to address these arguments. The addendum presented to us by the appellants does not reflect it, but the circuit court eventually wrote a letter to appellants' counsel in which it denied the requested relief. No formal order denying the motion was ever entered, however. This court has noted that

> a purported dismissal of claims in a letter opinion that is not incorporated into the judgment is ineffective. The decisions, opinions, and findings of a court—including

those expressed in a letter opinion—do not constitute a judgment or decree; they merely form the bases upon which the judgment or decree is subsequently to be rendered and are not conclusive unless incorporated in a judgment. *Thomas v. McElroy*, 243 Ark. 465, 420 S.W.2d 530 (1967); *Moses v. Daurtartas*, 53 Ark. App. 242, 922 S.W.2d 345 (1996).

*Wilkinson v. Smith*, 2012 Ark. App. 604, at 2. We therefore lack an effective ruling on the arguments that were raised in the appellants' motion to stay and to recall the body attachment and which are now raised on appeal. Accordingly, these issues are not preserved for our appellate review. We do not review on appeal matters on which the trial court did not rule, and the party raising the point on appeal has the burden to obtain the ruling. *Bryant v. Hendrix*, 375 Ark. 200, 289 S.W.3d 402 (2008); *Hodges v. Huckabee*, 338 Ark. 454, 995 S.W.2d 341 (1999).

Affirmed.

VAUGHT, J., agrees.

HARRISON, J., concurs.

**BRANDON J. HARRISON, Judge, concurring.** I agree with parts I and II of my colleagues' decision and concur with part III. A primary aspect of the contempt issue was preserved for appeal in my view, and I write separately to explain why I would affirm the circuit court's contempt-related decision on the merits.

The appellees filed a petition for body attachment more than one year before the final order was issued in this case. The appellants responded in writing that they could not place the sale proceeds into the court's registry as ordered because all the money had been spent. The appellants made a clear "inability to pay" argument in their response to the petition for

body attachment. They did so again during the trial when the issues were joined. Specifically, Linda Marston admitted during direct examination that she could not pay. Marston testified that she and her siblings each received about $11,100.00 from the sale proceeds, that the court directed them to pay the money into the registry about a month after the sale, and that she had spent everything by that time. Marston said that she did not know if the other siblings had any money to post into the court's registry.

Appellants' counsel then introduced Exhibit 10, a document that detailed how Marston spent her share of the house-sale proceeds. Twenty-eight items were listed, ranging from "Mr. Rob's cleaners: $41.25," to "Jessica Marston for helping with mom: $1,000," to "For Misc . . . like clothes, food, gas and bills: $1,954.15," to "Wal-Mart: $39.34," to "Wireless Accessories: $64.95," to "For fixing our house from Lowels, Yeagers: $1,207.05," to "Lawyer Estell: $1,000," and a number of other rather usual expenses. No evidence regarding how the other appellants spent their house-sale money was ever even proffered. In other words, no one but Marston even attempted to provide the circuit court with inability-to-pay proof.

After the bench trial, the court entered judgment on the main issue of the case and found the appellants in contempt for not complying with the 15 August 2012 order that directed them to deposit the house-sale proceeds into the court's registry. The whole case was reduced to one judgment, entered on 5 August 2013, and appellants timely appealed that judgment.

The court's contempt finding was civil in nature. That was how it was generally handled below—at least until the postjudgment phase and this appeal, when the lines of

argument admittedly expanded.  Recall that in response to the petition for body attachment, the appellants raised an inability-to-pay defense, which, if accepted, would have been a complete defense to an attempt to enforce payment through imprisonment.  *Griffith v. Griffith*, 225 Ark. 487, 283 S.W.2d 340 (1955).  As a matter of civil-contempt law, the circuit court had the power to coerce appellants to pay money it had previously ordered them to tender to the court, though that power is circumscribed by a contemnor's inability to pay.  "If the court finds inability to comply, the civil contempt citation must be dismissed. . . . If, however, one capable of paying money is ordered to do so and refuses, a court order imprisoning the defendant is held to be imprisonment for contempt and not for debt." 2 David Newbern, et al., *Arkansas Practice Series: Civil Practice and Procedure* § 33:7, at 723 (5th ed. 2010); *see also Albarran v. Liberty Healthcare Mgmt.*, 2013 Ark. App. 738, 431 S.W.3d 310.

This brings us to the proof Marston and the others did or did not present on the inability-to-pay consideration.  As a matter of proof, the court's decision that Marston and the other appellants failed to prove an inability to pay was not clearly against the preponderance of the evidence.  The record shows that the appellants consistently failed to pay any money, for over a year, in violation of the court's order.  The first assertion of an inability to pay was presented in the response to the petition for body attachment.  No affidavits or sworn statements were attached to the response—all the court had at that point were lawyers' assertions.  Those assertions, standing alone, are not evidence.  *See Smith v. Ark. Dep't of Human Servs.*, 2013 Ark. App. 753, at 6, 431 S.W.3d 364, 368 (2013) (attorney's arguments

10


not evidence).  And one year later, during the bench trial, all the proof of inability to pay came through Linda Marston, and that evidence did not persuade the court.

The circuit court could have concluded on the record made pretrial and during the trial that the appellants failed to prove an inability to pay and therefore could not avoid the civil-contempt punishment.  I therefore agree to affirm the circuit court's judgment.

*Medlock and Gramlich, Attorneys at Law*, by: *M. Jered Medlock* and *W. Steven Estell*, for appellants.

*Law Office of H. Ray Hodnett*, by: *H. Ray Hodnett*, for appellees.