Cite as 2025 Ark. App. 93

# ARKANSAS COURT OF APPEALS
DIVISION I
No. CV-23-695

| | |
|---|---|
| LAWRENCE E. CROCKETT, SR.; AND TANYA H. CROCKETT<br><br>APPELLANTS<br><br>V.<br><br>LAWRENCE E. CROCKETT, JR.<br>APPELLEE | Opinion Delivered February 12, 2025<br><br>APPEAL FROM THE JEFFERSON COUNTY CIRCUIT COURT<br>[NO. 35CV-21-30]<br><br>HONORABLE ROBERT H. WYATT, JR., JUDGE<br><br><br>AFFIRMED |

**WAYMOND M. BROWN, Judge**

Appellants Lawrence Crockett, Sr. (Crockett Sr.), and his wife, Tanya Crockett,

appeal the June 29, 2023 order of the Jefferson County Circuit Court canceling six quitclaim

deeds[1] filed by appellants on October 20, 2020, placing the six properties in appellants'

---

[1]Quitclaim deed filed for record in Book 1042, Page 697, described as follows:

Lot 20, Block 7 of Belmont Addition, Section 2, an addition of the City of Pine Bluff, Jefferson County, Arkansas, according to the plat thereof filed for record in the office of the Recorder of Jefferson County, plat book 5, page 87, located in the West half of the East half of Section 11, Township 6 South, Range 9 West.

Quitclaim deed filed for record in Book 1042, Page 701, described as follows:

Lot 67 of Broadmoor Subdivision, Unit 2, to the City of Pine Bluff, Jefferson County, Arkansas, same being located in the West Half of Section 11, Township 6 South, Range 9 West of the 5th P.M.

Quitclaim deed filed for record in Book 1042, Page 703, described as follows:

names. The circuit court also quieted title in appellee, Lawrence Crockett, Jr.. Appellants argue that the circuit court exceeded the scope of the pleadings by quieting title and erred by canceling and voiding the quitclaim deeds when there was no evidence of a false misrepresentation, deceit, or intentional wrongdoing. We affirm.

Appellee filed a complaint against appellants on January 20, 2021, for cancellation of forged instruments and quiet title. Appellee contended that between July 3, 2001, and about June 11, 2003, he financed six properties[2] in Pine Bluff, Arkansas, at the request of his father,

------

Lot 1, Block 10 of the Belmont Addition, Section 3 to the City of Pine Bluff, Jefferson County, Arkansas, according to plat therefore filed.

Quitclaim deed filed for record in Book 1042, Page 705, described as follows:

Lot 6 of Jefferson Heights South Unit 2, to the City of Pine Bluff, Jefferson County, same being located in the West Half of the Southeast Quarter and the Southeast Quarter of the Southwest Quarter of Section 18, Township 6 South, Range 9 West of the 5th P.M.

Quitclaim deed filed for record in Book 1042, Page 707, described as follows:

The North Half of Lots 1 and 2, in Block 19, of the Forrest Park Addition to the City of Pine Bluff, Jefferson County, Arkansas, Lot 15 of the Southwest Quarter of the Southeast Quarter of Section 16, Township 6 South, Range 9 West of the 5th P.M.

Quitclaim deed filed for record in Book 1042, Page 709, described as follows:

Lot 2, Block 9 of the Belmont Addition, Section 3 to the City of Pine Bluff, Jefferson County, Arkansas, according to plat therefore filed for record in the office of the Recorder in plat book 5, page 102.

[2]The street addresses of the properties are 1301 Collins Drive, 1412 Belmoor Drive, 4307 South Avenue, 1505 Brentwood Drive, 902 West 33rd Avenue, and 1302 Bailey Street.

Crockett Sr. The warranty deeds were put in appellee's name, with his uncle, Keith Crockett, acting as appellee's attorney-in-fact for each transaction. On October 2, 2020, appellants executed six quitclaim deeds in their favor and recorded them on October 20. Appellee maintained that the deeds executed by appellants were obtained by forgery and fraud and should be canceled and declared void. He also argued that the title to the properties should be quieted in him. Appellee asked for damages for filing false instruments.

Appellants filed an answer on February 23, 2021, denying the material aspects of appellee's complaint and asking the circuit court to dismiss the action. Appellants filed a motion to dismiss on March 11, 2022. Appellee filed a response on March 25. The circuit court orally denied the motion to dismiss at the beginning of the hearing, which took place on June 8, 2023.

Appellee testified that he is an analyst with the U.S. Government Accountability Office and that the appellants are his father and stepmother. He stated that he received a call from Crockett Sr. in 2001 or 2002 telling him that Keith was buying houses in Pine Bluff and flipping them. He said that at that time, he was living in Virginia, and appellants were living in New York. He stated that Crockett Sr. told him there was an opportunity for Crockett Sr. to purchase some homes and use the rental income to pay them off. Crockett Sr. needed appellee to finance the properties and indicated that there would be some financial benefits to appellee, but Crockett Sr. did not say what those benefits would be. Thus, appellee was to be the borrower and owner of the properties. Appellee ended up taking out mortgages on the six properties listed above. Appellee stated that he created a

3

living will on May 14, 2003, since he was volunteering with the Peace Corps and going to South America. In the will, Crockett Sr. was to inherit five of the six properties[3] because according to appellee, he and Crockett Sr. had an arrangement wherein the properties would go to Crockett Sr. However, appellee stated that it was his understanding that the properties were to be paid off within five to ten years. He stated that in 2020, only one of the mortgages had been paid off and that Crockett Sr. had a history of being delinquent on the payments, which negatively affected appellee's credit score. He stated that he could not even get a credit card in his name.

Appellee testified that he and Crockett Sr. had several conversations about Crockett Sr.'s paying off the mortgages, but nothing was coming to fruition. Appellee sent Crockett Sr. a text message on August 22, 2020, asking Crockett Sr. for a detailed plan within thirty days, or by September 30. Appellee wanted the plan to include time frames as well as other details and indicated that if the plan was not received on time or if appellee was not satisfied with the plan, he would do whatever was needed to clear the mortgages off his credit. Crockett Sr. told appellee to "slow down" and that he was going to "take care of everything as promised." Appellee told Crockett Sr. that he had abused the situation, and as a result, appellee had been hurting financially for fifteen to twenty years. Crockett Sr. told appellee that he would keep his promise, and appellee would be compensated. Appellee sent Crockett Sr. an email on September 28 stating that he still had not heard anything from Crockett Sr.

---

[3]Appellee had not closed on the Bailey property at this time.

4

and informing Crockett Sr. that he planned on liquidating the properties if no plan of action was received. He gave Crockett Sr. until the close of business on October 2 to provide appellee with the requested plan of action. Crockett Sr. told appellee that appellee was making a tragic mistake and stated that there was a smart way to resolve the problem. Appellee testified that he had not been compensated by Crockett Sr. Appellee stated that appellants executed the six quitclaim deeds that are the subject of appellee's complaint on October 2, without his knowledge. He stated that he was upset because it prevented him from selling the properties as planned.

On cross-examination by Crockett Sr., appellee testified that Crockett Sr. had made the down payments on all the properties in question. Appellee stated that he did not file tax returns or take write offs because he believed Crockett Sr. was doing it. He said he had not incurred any expenses that he had to pay directly, including any repairs over the years. However, he stated that he told Crockett Sr. that if there was any issue paying the mortgages to let him know, but he did not receive any calls indicating that was the case. He admitted that Crockett Sr. was assuming all the responsibility for acquiring and managing the properties and that he himself had not participated in that effort except for the financing. He stated that he was told he would receive financial benefits, but it was not clear about the benefits. When presented with the text message he sent to Crockett Sr., appellee stated that he was trying to find a way to get out from under the debt because Crockett Sr. had initially told him that the mortgages would be paid off within five to ten years. Appellee testified

that he had not paid any property taxes or insurance on the properties because it was his understanding that Crockett Sr. would use the rental income to make those payments.

On redirect, appellee stated that he thought that it would take five to ten years for the mortgages to get paid off, but at the time the complaint was filed, five mortgages remained. There were two mortgages remaining at the time of the hearing. He also stated that he gave Crockett Sr. a $3,000 loan to close on the Bailey property. On recross, appellee stated that the loan was made between March and April 2003, but he just let it go when Crockett Sr. claimed to have no memory of the loan.

Crockett Sr. testified[4] that he did not remember the $3,000 loan appellee testified about. He went over the contributions he made to appellee's education and his commitment to all his children's education. He stated that appellee financed the properties but that there was no intent or expectation that appellee would have ownership, and appellee knew this.

Crockett Sr. stated that he regretted that it took this long to get the mortgages paid down. He denied that the mortgages were to be paid off in five to ten years. He denied that the six properties were in appellee's name to begin with—only two of the properties were in appellee's name, and the other four were in his name. When asked about his Zoom deposition on July 30, 2021, in which he stated that he did not dispute that the six properties were in appellee's name, he stated that it must have been a misunderstanding in the way his response was worded and that he "stand to correct that." Again, he denied that all six

---

[4]Tanya did not appear at the hearing or otherwise participate.

properties were in appellee's name but stated that appellee financed all the properties. In another part of his deposition testimony, Crockett Sr. did not dispute that the appellee's name was listed on the deeds to the six properties, but at the hearing, he reiterated that appellee's name was only on two of the deeds. He testified that he and appellee last discussed their arrangement in Atlanta in 2018. He denied filing the deeds to prevent appellee from selling the properties but said that he filed them to get everything in his name as appellee requested. He stated that his brother, Keith, was also acting as his power of attorney at the time the properties were purchased. He said that he filed the deeds to remove appellee's name "from the rent role - - the property tax role. To have responsibility for property taxes on the assessed value of those properties as we had discussed." He said that his wife's name was added, and appellee's name was removed.

The circuit court entered an order and decree quieting title on June 29, 2023. In the order, the circuit court found appellee credible and Crockett Sr. not credible. The circuit court found that appellee had met his burden of proof to cancel the quitclaim deeds filed of record on October 20, 2020. Thus, the deeds were canceled and declared void. The circuit court also quieted title to the properties in appellee. Appellants filed a timely notice of appeal on July 27, 2023. This appeal followed.

This court reviews matters in equity de novo on the record. The standard of review of a circuit court's findings of fact after a bench trial is whether those findings are clearly

erroneous.[5] A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made.[6] In reviewing a circuit court's findings of fact, we give due deference to the circuit court's superior position to determine the credibility of witnesses and the weight to be accorded to their testimony.[7]

Appellants maintain that the circuit court erred in canceling and voiding the quitclaim deeds when there was no evidence of a false misrepresentation, deceit, or intentional wrongdoing. They also contend that there was no evidence of forgery or fraud. While we agree with appellants that the evidence presented at the hearing does not show forgery, we disagree that the circuit court erred in canceling and voiding the deeds. They argue that they cannot convey greater title than what they had, so it could be no fraud on their part.[8] Here, appellants attempted to grant an interest in properties to themselves, which they did not have. This, at the very least, showed intentional wrongdoing. Even though they knew they held no title to the properties, this did not prevent them from drawing up quitclaim deeds and recording them, placing a cloud on appellee's title to the

---

[5]*Munzner v. Kushner*, 2010 Ark. App. 196, 375 S.W.3d 647.

[6]*Id.*

[7]*Id.*

[8]*See Stewart v. First Com. Bank*, 59 Ark. App. 47, 953 S.W.2d 592 (1997) (A grantor cannot transfer greater title than he has, and a grantee cannot receive greater title than his grantor has.).

properties. They took this action after they were informed by appellee that he intended to sell the properties and get out from under their debts since appellants had failed to present him with a plan of action as requested. Instead of meeting the October 2 deadline with a plan of action, they executed the quitclaim deeds without appellee's knowledge or permission. These facts are enough to support the circuit court's decision to cancel and void the quitclaim deeds filed of record on October 20, 2020. Accordingly, we affirm.

Appellants also argues that the circuit court exceeded the scope of the pleadings by quieting title. More specifically, they contend that the circuit court lacked subject-matter jurisdiction to quiet title in appellee. Given the circumstances and facts of this case, we need not address this issue because appellee held title to all the properties before appellants filed the now canceled and voided deeds. Even if the circuit court did exceed its authority, the result will be the same: warranty deeds reflecting appellee as the owner.

Affirmed.

TUCKER and WOOD, JJ., agree.

*Wilson & Associates, PLLC*, by: *H. Keith Morrison*, for appellants.

*Niswanger Law Firm PLC*, by: *Stephen B. Niswanger*, for appellee.